

**FILED**

FEB 2 8 2012

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Namon Kent | } | Filed· |
| | } | |
| Plaintiff, | } | Ca  1:12-cv-01411 |
| | } | Judge John F. Grady |
| v. | } | Ju  Magistrate Judge Jeffrey T. Gilbert |
| | } | |
| CHASE BANK USA, N.A., a Corporation; | } | |
| and Does 1 through 100, inclusive, | } | Magistrate Judge: |
| | } | |
| Defendants | } | |

## COMPLAINT

COMPLAINANT, Namon Kent, for its complaint against the above-named defendants,

states as follows:

### Introduction

1. This proceeding is brought by Namon Kent, an individual, to enjoin CHASE BANK USA,

   N.A., a Corporation and Does 1 through 100 inclusive, from violating Title 15 U.S.C. §1681

   (i) which is actionable under Title 15 U.S.C. §1681s-2(b) by failing to investigate the

   Plaintiff's disputed credit card account, and as a result has injured Plaintiff.

### JURISDICTION AND PARTIES

2. At all times herein mentioned, Complainant, Namon Kent, (hereafter referred to as "KENT")

   is a resident of the County of Cook, in the State of Illinois.

3. KENT is informed and believes and on that basis alleges, that Defendant, CHASE BANK,

1

USA, N.A., (hereafter referred to as "CHASE,") located at 15000 CHASE One Dr.,

Richmond, VA 23238, is within the territorial confines of the United States, was at all times

herein mentioned, a business authorized to do business in the State of Illinois.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§1331 and 1367,

18 U.S.C. §1964(c), and 15 U.S.C. §1640(e).

5. Venue is proper in the Northern District of Illinois under 28 U.S.C. §1391(b), and Title 15

USC §1681(i), actionable under Title 15 USC §1681 (s) (2b), as KENT has suffered damage

as a result of violations by CHASE.

## B. FACTUAL BACKGROUND

6. Plaintiff incorporates each and every allegation contained in Paragraphs 1 through 5 above,

as though fully set forth herein.

7. On or about August 7, 2009, KENT notified CHASE with a letter (hereafter referred to as

"LETTER") of dispute regarding alleged credit card accounts, of which CHASE never

responded to this LETTER.

8. In that LETTER, KENT contends that CHASE placed inaccurate information on the

Plaintiff's credit file reported to the Credit Reporting Agencies (hereafter referred to as

"CRA's").

9. KENT contends that CHASE is a credit reporting agency due to the definition per Title 15

USC §1681(p).

> **Title 15 USC §1681(p).**
> Consumer Reporting Agency That Compiles and Maintains Files on Consumers
> on a Nationwide Basis.— The term "consumer reporting agency that compiles
> and maintains files on consumers on a nationwide basis" means a consumer
> reporting agency that regularly engages in the practice of assembling or
> evaluating, and maintaining, for the purpose of furnishing consumer reports to

third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide: (1) Public record information. (2) Credit account information from persons who furnish that information regularly.

10. In that LETTER, KENT contends that CHASE [KENT contends that CHASE is a credit reporting agency] was directly notified of the inaccurate information on the Plaintiff's internal credit file, which was reported to the CRA's (Equifax, Experian, and Transunion).

11. KENT contends that the LETTER sent to CHASE was not frivolous or irrelevant; in fact the dispute had merit, due to the fact that KENT never received, used, or made payments of the alleged credit card account.

12. In that LETTER, KENT contends that CHASE [KENT contends that CHASE is a credit reporting agency] failed to respond to Plaintiff's written dispute.

13. KENT contends that CHASE [KENT contends that CHASE is a credit reporting agency] failed to reinvestigate which caused Plaintiff to suffer damages.

14. KENT contends that CHASE [KENT contends that CHASE is a credit reporting agency] failed in removing the inaccurate information that was in dispute internally or with the public CRA's (Equifax, Experian, and Transunion).

15. KENT contends that Plaintiff has been damaged caused by humiliation, mental distress, injury to reputation, and creditworthiness, resulted by the actions of CHASE.

16. KENT contends that CHASE [KENT contends that CHASE is a credit reporting agency] failed to investigate the dispute in violation of Title 15 U.S.C. §1681i which is actionable under Title 15 U.S.C. §1681s-2(b).

**Title 15 U.S.C. §1681i**
(a) Reinvestigations of disputed information
(1) Reinvestigation required

(A) In general

Subject to subsection (f) of this section, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

(B) Extension of period to reinvestigate

Except as provided in subparagraph (C), the 30-day period described in subparagraph (A) may be extended for not more than 15 additional days if the consumer reporting agency receives information from the consumer during that 30-day period that is relevant to the reinvestigation.

(C) Limitations on extension of period to reinvestigate

Subparagraph (B) shall not apply to any reinvestigation in which, during the 30-day period described in subparagraph (A), the information that is the subject of the reinvestigation is found to be inaccurate or incomplete or the consumer reporting agency determines that the information cannot be verified.

(2) Prompt notice of dispute to furnisher of information

(A) In general

Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

(B) Provision of other information

The consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer or the reseller after the period referred to in subparagraph (A) and before the end of the period referred to in paragraph (1)(A).

(3) Determination that dispute is frivolous or irrelevant

(A) In general

Notwithstanding paragraph (1), a consumer reporting agency may terminate a reinvestigation of information disputed by a consumer under that paragraph if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information.

(B) Notice of determination

Upon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination, by mail or, if authorized by the consumer for that purpose, by any other means available to the agency.

(C) Contents of notice

A notice under subparagraph (B) shall include—

(i) the reasons for the determination under subparagraph (A); and

(ii) identification of any information required to investigate the disputed information, which may consist of a standardized form describing the general nature of such information.

(4) Consideration of consumer information

In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information.

(5) Treatment of inaccurate or unverifiable information

(A) In general

If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall—

(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

(B) Requirements relating to reinsertion of previously deleted material

(i) Certification of accuracy of information If any information is deleted from a consumer's file pursuant to subparagraph (A), the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate.

(ii) Notice to consumer If any information that has been deleted from a consumer's file pursuant to subparagraph (A) is reinserted in the file, the consumer reporting agency shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion or, if authorized by the consumer for that purpose, by any other means available to the agency.

(iii) Additional information As part of, or in addition to, the notice under clause (ii), a consumer reporting agency shall provide to a consumer in writing not later than 5 business days after the date of the reinsertion—

(I) a statement that the disputed information has been reinserted;

(II) the business name and address of any furnisher of information contacted and the telephone number of such furnisher, if reasonably available, or of any

furnisher of information that contacted the consumer reporting agency, in connection with the reinsertion of such information; and

(III) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the disputed information.

(C) Procedures to prevent reappearance

A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph (other than information that is reinserted in accordance with subparagraph (B)(i)).

(D) Automated reinvestigation system

Any consumer reporting agency that compiles and maintains files on consumers on a nationwide basis shall implement an automated system through which furnishers of information to that consumer reporting agency may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file to other such consumer reporting agencies.

(6) Notice of results of reinvestigation

(A) In general

A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.

(B) Contents

As part of, or in addition to, the notice under subparagraph (A), a consumer reporting agency shall provide to a consumer in writing before the expiration of the 5-day period referred to in subparagraph (A)—

(i) a statement that the reinvestigation is completed;

(ii) a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation;

(iii) a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available;

(iv) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and

(v) a notice that the consumer has the right to request under subsection (d) of this section that the consumer reporting agency furnish notifications under that subsection.

(7) Description of reinvestigation procedure

A consumer reporting agency shall provide to a consumer a description referred to in paragraph (6)(B)(iii) by not later than 15 days after receiving a request from the consumer for that description.

(8) Expedited dispute resolution

6

If a dispute regarding an item of information in a consumer's file at a consumer reporting agency is resolved in accordance with paragraph (5)(A) by the deletion of the disputed information by not later than 3 business days after the date on which the agency receives notice of the dispute from the consumer in accordance with paragraph (1)(A), then the agency shall not be required to comply with paragraphs (2), (6), and (7) with respect to that dispute if the agency—

(A) provides prompt notice of the deletion to the consumer by telephone;

(B) includes in that notice, or in a written notice that accompanies a confirmation and consumer report provided in accordance with subparagraph (C), a statement of the consumer's right to request under subsection (d) of this section that the agency furnish notifications under that subsection; and

(C) provides written confirmation of the deletion and a copy of a consumer report on the consumer that is based on the consumer's file after the deletion, not later than 5 business days after making the deletion.

(b) Statement of dispute

If the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute. The consumer reporting agency may limit such statements to not more than one hundred words if it provides the consumer with assistance in writing a clear summary of the dispute.

(c) Notification of consumer dispute in subsequent consumer reports

Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.

(d) Notification of deletion of disputed information

Following any deletion of information which is found to be inaccurate or whose accuracy can no longer be verified or any notation as to disputed information, the consumer reporting agency shall, at the request of the consumer, furnish notification that the item has been deleted or the statement, codification or summary pursuant to subsection (b) or (c) of this section to any person specifically designated by the consumer who has within two years prior thereto received a consumer report for employment purposes, or within six months prior thereto received a consumer report for any other purpose, which contained the deleted or disputed information.

(e) Treatment of complaints and report to Congress

(1) In general

The Commission shall—

(A) compile all complaints that it receives that a file of a consumer that is maintained by a consumer reporting agency described in section 1681a (p) of this title contains incomplete or inaccurate information, with respect to which, the consumer appears to have disputed the completeness or accuracy with the

consumer reporting agency or otherwise utilized the procedures provided by subsection (a) of this section; and

(B) transmit each such complaint to each consumer reporting agency involved.

(2) Exclusion

Complaints received or obtained by the Commission pursuant to its investigative authority under the Federal Trade Commission Act [15 U.S.C. 41 et seq.] shall not be subject to paragraph (1).

(3) Agency responsibilities

Each consumer reporting agency described in section 1681a (p) of this title that receives a complaint transmitted by the Commission pursuant to paragraph (1) shall—

(A) review each such complaint to determine whether all legal obligations imposed on the consumer reporting agency under this subchapter (including any obligation imposed by an applicable court or administrative order) have been met with respect to the subject matter of the complaint;

(B) provide reports on a regular basis to the Commission regarding the determinations of and actions taken by the consumer reporting agency, if any, in connection with its review of such complaints; and

(C) maintain, for a reasonable time period, records regarding the disposition of each such complaint that is sufficient to demonstrate compliance with this subsection.

(4) Rulemaking authority

The Commission may prescribe regulations, as appropriate to implement this subsection.

(5) Annual report

The Commission shall submit to the Committee on Banking, Housing, and Urban Affairs of the Senate and the Committee on Financial Services of the House of Representatives an annual report regarding information gathered by the Commission under this subsection.

(f) Reinvestigation requirement applicable to resellers

(1) Exemption from general reinvestigation requirement

Except as provided in paragraph (2), a reseller shall be exempt from the requirements of this section.

(2) Action required upon receiving notice of a dispute

If a reseller receives a notice from a consumer of a dispute concerning the completeness or accuracy of any item of information contained in a consumer report on such consumer produced by the reseller, the reseller shall, within 5 business days of receiving the notice, and free of charge—

(A) determine whether the item of information is incomplete or inaccurate as a result of an act or omission of the reseller; and

(B) if—

(i) the reseller determines that the item of information is incomplete or inaccurate as a result of an act or omission of the reseller, not later than 20 days after receiving the notice, correct the information in the consumer report or delete it; or

(ii) if the reseller determines that the item of information is not incomplete or inaccurate as a result of an act or omission of the reseller, convey the notice of the dispute, together with all relevant information provided by the consumer, to each consumer reporting agency that provided the reseller with the information that is the subject of the dispute, using an address or a notification mechanism specified by the consumer reporting agency for such notices.

(3) Responsibility of consumer reporting agency to notify consumer through reseller

Upon the completion of a reinvestigation under this section of a dispute concerning the completeness or accuracy of any information in the file of a consumer by a consumer reporting agency that received notice of the dispute from a reseller under paragraph (2)—

(A) the notice by the consumer reporting agency under paragraph (6), (7), or (8) of subsection (a) of this section shall be provided to the reseller in lieu of the consumer; and

(B) the reseller shall immediately reconvey such notice to the consumer, including any notice of a deletion by telephone in the manner required under paragraph (8) (A).

(4) Reseller reinvestigations

No provision of this subsection shall be construed as prohibiting a reseller from conducting a reinvestigation of a consumer dispute directly.

**Title 15 USC §1681s-2(b).**

(a) Duty of furnishers of information to provide accurate information

(1) Prohibition

(A) Reporting information with actual knowledge of errors

A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

(B) Reporting information after notice and confirmation of errors

A person shall not furnish information relating to a consumer to any consumer reporting agency if—

(i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

(ii) the information is, in fact, inaccurate.

(C) No address requirement

A person who clearly and conspicuously specifies to the consumer an address for notices referred to in subparagraph (B) shall not be subject to subparagraph (A); however, nothing in subparagraph (B) shall require a person to specify such an address.

(D) Definition

For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.

(2) Duty to correct and update information

A person who—

(A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

**(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.**

(3) Duty to provide notice of dispute

If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

(4) Duty to provide notice of closed accounts

A person who regularly and in the ordinary course of business furnishes information to a consumer reporting agency regarding a consumer who has a credit account with that person shall notify the agency of the voluntary closure of the account by the consumer, in information regularly furnished for the period in which the account is closed.

(5) Duty to provide notice of delinquency of accounts

(A) In general

A person who furnishes information to a consumer reporting agency regarding a delinquent account being placed for collection, charged to profit or loss, or subjected to any similar action shall, not later than 90 days after furnishing the information, notify the agency of the date of delinquency on the account, which shall be the month and year of the commencement of the delinquency on the account that immediately preceded the action.

(B) Rule of construction

For purposes of this paragraph only, and provided that the consumer does not dispute the information, a person that furnishes information on a delinquent account that is placed for collection, charged for profit or loss, or subjected to any similar action, complies with this paragraph, if—

(i) the person reports the same date of delinquency as that provided by the creditor to which the account was owed at the time at which the commencement of the

delinquency occurred, if the creditor previously reported that date of delinquency to a consumer reporting agency;

(ii) the creditor did not previously report the date of delinquency to a consumer reporting agency, and the person establishes and follows reasonable procedures to obtain the date of delinquency from the creditor or another reliable source and reports that date to a consumer reporting agency as the date of delinquency; or

(iii) the creditor did not previously report the date of delinquency to a consumer reporting agency and the date of delinquency cannot be reasonably obtained as provided in clause (ii), the person establishes and follows reasonable procedures to ensure the date reported as the date of delinquency precedes the date on which the account is placed for collection, charged to profit or loss, or subjected to any similar action, and reports such date to the credit reporting agency.

(6) Duties of furnishers upon notice of identity theft-related information

(A) Reasonable procedures

A person that furnishes information to any consumer reporting agency shall have in place reasonable procedures to respond to any notification that it receives from a consumer reporting agency under section 1681c–2 of this title relating to information resulting from identity theft, to prevent that person from refurnishing such blocked information.

(B) Information alleged to result from identity theft

If a consumer submits an identity theft report to a person who furnishes information to a consumer reporting agency at the address specified by that person for receiving such reports stating that information maintained by such person that purports to relate to the consumer resulted from identity theft, the person may not furnish such information that purports to relate to the consumer to any consumer reporting agency, unless the person subsequently knows or is informed by the consumer that the information is correct.

(7) Negative information

(A) Notice to consumer required

(i) In general If any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency described in section 1681a (p) of this title furnishes negative information to such an agency regarding credit extended to a customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer.

(ii) Notice effective for subsequent submissions After providing such notice, the financial institution may submit additional negative information to a consumer reporting agency described in section 1681a (p) of this title with respect to the same transaction, extension of credit, account, or customer without providing additional notice to the customer.

(B) Time of notice

(i) In general The notice required under subparagraph (A) shall be provided to the customer prior to, or no later than 30 days after, furnishing the negative

information to a consumer reporting agency described in section 1681a (p) of this title.

(ii) Coordination with new account disclosures If the notice is provided to the customer prior to furnishing the negative information to a consumer reporting agency, the notice may not be included in the initial disclosures provided under section 1637 (a) of this title.

(C) Coordination with other disclosures

The notice required under subparagraph (A)—

(i) may be included on or with any notice of default, any billing statement, or any other materials provided to the customer; and

(ii) must be clear and conspicuous.

(D) Model disclosure

(i) Duty of Board to prepare The Board shall prescribe a brief model disclosure a financial institution may use to comply with subparagraph (A), which shall not exceed 30 words.

(ii) Use of model not required No provision of this paragraph shall be construed as requiring a financial institution to use any such model form prescribed by the Board.

(iii) Compliance using model A financial institution shall be deemed to be in compliance with subparagraph (A) if the financial institution uses any such model form prescribed by the Board, or the financial institution uses any such model form and rearranges its format.

(E) Use of notice without submitting negative information

No provision of this paragraph shall be construed as requiring a financial institution that has provided a customer with a notice described in subparagraph (A) to furnish negative information about the customer to a consumer reporting agency.

(F) Safe harbor

A financial institution shall not be liable for failure to perform the duties required by this paragraph if, at the time of the failure, the financial institution maintained reasonable policies and procedures to comply with this paragraph or the financial institution reasonably believed that the institution is prohibited, by law, from contacting the consumer.

(G) Definitions

For purposes of this paragraph, the following definitions shall apply:

(i) Negative information The term "negative information" means information concerning a customer's delinquencies, late payments, insolvency, or any form of default.

(ii) Customer; financial institution The terms "customer" and "financial institution" have the same meanings as in section 6809 of this title.

(8) Ability of consumer to dispute information directly with furnisher

(A) In general

The Federal banking agencies, the National Credit Union Administration, and the Commission shall jointly prescribe regulations that shall identify the circumstances under which a furnisher shall be required to reinvestigate a dispute concerning the accuracy of information contained in a consumer report on the consumer, based on a direct request of a consumer.

(B) Considerations

In prescribing regulations under subparagraph (A), the agencies shall weigh—

(i) the benefits to consumers with the costs on furnishers and the credit reporting system;

(ii) the impact on the overall accuracy and integrity of consumer reports of any such requirements;

(iii) whether direct contact by the consumer with the furnisher would likely result in the most expeditious resolution of any such dispute; and

(iv) the potential impact on the credit reporting process if credit repair organizations, as defined in section 1679a (3) of this title, including entities that would be a credit repair organization, but for section 1679a (3)(B)(i) of this title, are able to circumvent the prohibition in subparagraph (G).

(C) Applicability

Subparagraphs (D) through (G) shall apply in any circumstance identified under the regulations promulgated under subparagraph (A).

(D) Submitting a notice of dispute

A consumer who seeks to dispute the accuracy of information shall provide a dispute notice directly to such person at the address specified by the person for such notices that—

(i) identifies the specific information that is being disputed;

(ii) explains the basis for the dispute; and

(iii) includes all supporting documentation required by the furnisher to substantiate the basis of the dispute.

(E) Duty of person after receiving notice of dispute

After receiving a notice of dispute from a consumer pursuant to subparagraph (D), the person that provided the information in dispute to a consumer reporting agency shall—

(i) conduct an investigation with respect to the disputed information;

(ii) review all relevant information provided by the consumer with the notice;

(iii) complete such person's investigation of the dispute and report the results of the investigation to the consumer before the expiration of the period under section 1681i (a)(1) of this title within which a consumer reporting agency would be required to complete its action if the consumer had elected to dispute the information under that section; and

(iv) if the investigation finds that the information reported was inaccurate, promptly notify each consumer reporting agency to which the person furnished the inaccurate information of that determination and provide to the agency any

correction to that information that is necessary to make the information provided by the person accurate.

(F) Frivolous or irrelevant dispute

(i) In general This paragraph shall not apply if the person receiving a notice of a dispute from a consumer reasonably determines that the dispute is frivolous or irrelevant, including—

(I) by reason of the failure of a consumer to provide sufficient information to investigate the disputed information; or

(II) the submission by a consumer of a dispute that is substantially the same as a dispute previously submitted by or for the consumer, either directly to the person or through a consumer reporting agency under subsection (b) of this section, with respect to which the person has already performed the person's duties under this paragraph or subsection (b) of this section, as applicable.

(ii) Notice of determination Upon making any determination under clause (i) that a dispute is frivolous or irrelevant, the person shall notify the consumer of such determination not later than 5 business days after making such determination, by mail or, if authorized by the consumer for that purpose, by any other means available to the person.

(iii) Contents of notice A notice under clause (ii) shall include—

(I) the reasons for the determination under clause (i); and

(II) identification of any information required to investigate the disputed information, which may consist of a standardized form describing the general nature of such information.

(G) Exclusion of credit repair organizations

This paragraph shall not apply if the notice of the dispute is submitted by, is prepared on behalf of the consumer by, or is submitted on a form supplied to the consumer by, a credit repair organization, as defined in section 1679a (3) of this title, or an entity that would be a credit repair organization, but for section 1679a (3)(B)(i) of this title.

(9) Duty to provide notice of status as medical information furnisher

A person whose primary business is providing medical services, products, or devices, or the person's agent or assignee, who furnishes information to a consumer reporting agency on a consumer shall be considered a medical information furnisher for purposes of this subchapter, and shall notify the agency of such status.

(b) Duties of furnishers of information upon notice of dispute

(1) In general

After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i (a)(2) of this title;

14

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

(2) Deadline

A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i (a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.

(c) Limitation on liability

Except as provided in section 1681s (c)(1)(B) of this title, sections 1681n and 1681o of this title do not apply to any violation of—

(1) subsection (a) of this section, including any regulations issued thereunder;

(2) subsection (e) of this section, except that nothing in this paragraph shall limit, expand, or otherwise affect liability under section 1681n or 1681o of this title, as applicable, for violations of subsection (b) of this section; or

(3) subsection (e) of section 1681m of this title.

(d) Limitation on enforcement

The provisions of law described in paragraphs (1) through (3) of subsection (c) of this section (other than with respect to the exception described in paragraph (2) of subsection (c) of this section) shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title.

(e) Accuracy guidelines and regulations required

(1) Guidelines

The Federal banking agencies, the National Credit Union Administration, and the Commission shall, with respect to the entities that are subject to their respective enforcement authority under section 1681s of this title, and in coordination as described in paragraph (2)—

(A) establish and maintain guidelines for use by each person that furnishes information to a consumer reporting agency regarding the accuracy and integrity of the information relating to consumers that such entities furnish to consumer reporting agencies, and update such guidelines as often as necessary; and

(B) prescribe regulations requiring each person that furnishes information to a consumer reporting agency to establish reasonable policies and procedures for implementing the guidelines established pursuant to subparagraph (A).

(2) Coordination

Each agency required to prescribe regulations under paragraph (1) shall consult and coordinate with each other such agency so that, to the extent possible, the regulations prescribed by each such entity are consistent and comparable with the regulations prescribed by each other such agency.

(3) Criteria

In developing the guidelines required by paragraph (1)(A), the agencies described in paragraph (1) shall—

(A) identify patterns, practices, and specific forms of activity that can compromise the accuracy and integrity of information furnished to consumer reporting agencies;

(B) review the methods (including technological means) used to furnish information relating to consumers to consumer reporting agencies;

(C) determine whether persons that furnish information to consumer reporting agencies maintain and enforce policies to assure the accuracy and integrity of information furnished to consumer reporting agencies; and

(D) examine the policies and processes that persons that furnish information to consumer reporting agencies employ to conduct reinvestigations and correct inaccurate information relating to consumers that has been furnished to consumer reporting agencies. [EMPHASIS ADDED]

17. KENT properly identified the violation of Title 15 U.S.C. section 1681i and also properly

identified his private right of action under Title 15 USC 1681s-2(b). See Gens v. Wachovia

Mortg. Corp., No. 10–CV–01073–LHK, 2011 WL 1791601, at *7 (N.D. Cal. May 10, 2011)

(citing Nelson, 282 F.3d at 1059) ("A consumer then has a private right of action in

connection with the performance of these four duties.").

18. KENT contends that CHASE sold one of the alleged credit card accounts to LVNV Funding

LLC (hereafter referred to as "LVNV") without recourse on January 12, 2011. See Exhibit 1.

19. KENT contends that LVNV wrongfully filed a lawsuit against KENT in the State of Illinois,

Circuit Court Cook County, Municipal Department, First District on or about June 22, 2011,

case number 2011-M1-141707 to collect monies from KENT for the alleged credit card account debt.

20. KENT contends that CHASE sold or assigned the other alleged credit card account to Central Portfolio Control, Inc. (hereafter referred to as "CPC").

21. On, or about, November 2, 2011, at or around 11 AM, Central Time Zone, Mr. Scott Fischer (hereafter referred to as "FISCHER") of CPC contacted KENT's wife and threatened to file suit if KENT did not pay the alleged CHASE credit card debt.

22. On, or about, November 2, 2011, at or around 3:28 PM, Central Time Zone KENT called FISCHER of CPC.

23. KENT contends that FISCHER confirmed by telephone that he, FISCHER, did threatened to file a lawsuit if KENT did not pay monies on the alleged CHASE credit card debt.

24. KENT contends that CPC's phone call and threat was an attempt of extortion and a form of harassment.

25. KENT has been damaged by the actions of CHASE.

26. KENT has errors on his credit report that were wrongfully reported by CHASE and CHASE's affiliates. See Exhibit 2.

27. KENT has expended a lot money in his defense.

28. KENT contends that CHASE failed to properly investigate the alleged credit card accounts.

29. KENT also contends that CHASE is a credit reporting agency which would have discovered the error, if CHASE had properly investigated the accounts.

30. CHASE failed to remove the alleged credit card accounts from KENT's credit report.

31. CHASE would not have sold the alleged credit card account to LVNV, if CHASE had properly investigated the account.

32. KENT contends that LVNV would not have filed suit against KENT, if CHASE had properly investigated the account.

33. KENT contends that CPC would not have called KENT and attempted to collect an uncollectible debt, if CHASE had properly investigated the account.

**FIRST CAUSE OF ACTION**
**Violation of the Title – 15 U.S.C. §1681i enforced under §1681s-2(b)**
**(Against all Defendants)**

34. Plaintiff incorporates each and every allegation contained in Paragraphs 1 through 33 above, as though fully set forth herein.

35. Plaintiff notified CHASE [Plaintiff maintains that CHASE falls within the definition of "consumer reporting agency"] that KENT disputed the alleged accounts.

36. In the LETTER, of Dispute KENT denied having a credit account with said Defendant.

37. CHASE failed to conduct a "reasonable investigation."

38. CHASE did not notify the Plaintiff of the results of any investigation.

39. Furthermore, CHASE failed to notify the CRA's of the dispute in a timely fashion and as a result Plaintiff's credit was and is damaged.

40. The Plaintiff has suffered, and continues to suffer from the undue stress.

41. CHASE's failure to conduct a "reasonable investigation," did not notify KENT of the results of any investigation within the statutory time frame, and subsequently reported disparaging entries with CRA's, violated Title 15 U.S.C. section 1681(i) which is actionable under Title 15 U.S.C. section 1681s-2(b).

42. To state a claim under 15 U.S.C. § 1681i, which may be enforced pursuant to 15 U.S.C. §

1681s–2(b), a plaintiff must allege the following elements: "(1) plaintiff's credit file contains inaccurate or incomplete information; (2) plaintiff notified the credit reporting agency directly of the inaccurate or incomplete information; (3) plaintiff's dispute is not frivolous or irrelevant; (4) the credit reporting agency failed to respond to plaintiff's dispute; (5) the failure to reinvestigate caused plaintiff to suffer damages; [and] (6) actual damages, such as damages caused by humiliation, mental distress, or injury to reputation or creditworthiness, resulted to plaintiff." Carvalho v. Equifax Info. Servs., LLC, 588 F. Supp. 2d 1089 (N.D. Cal. 2008) (providing the elements for a prima facie case under §1681i on a motion for summary judgment), the Plaintiff has done so in his pleading.

## **PRAYER**

**WHEREFORE,** Plaintiff requests judgment against Defendant, jointly and severally:

1.  That judgment be entered in Plaintiff's favor and against Defendant, and each of them;

2.  That a judgment be entered on behalf of Plaintiff against Defendant for damages both compensatory and statutory, and for fees and costs according to proof at trial;

3.  For exemplary damages in an amount sufficient to punish Defendant's wrongful conduct and deter future misconduct;

4.  For an order requiring that Defendant's derogatory items be removed from Plaintiff's credit report;

5.  For any and all other further relief this Court may deem just and proper.

Dated this 28th day of February, 2012, at Chicago, Illinois.

Respectfully submitted,

Namon Kent, In Pro Se
Your Community Law Office & Legal Clinic
8043 South Paulina Street
Chicago, IL 60620-4531
(773) 846-2272

# LIST of EXHIBITS

## 1. Bill of Sale

## 2. Credit Report

# EXHIBIT 1

**CHASE**

### BILL OF SALE

Chase Bank USA, N.A. ("Seller"), for value received and pursuant to the terms and conditions of Credit Card Account Purchase Agreement dated December 10, 2010 between Seller and Sherman Originator III, LLC ("Purchaser"), its successors and assigns ("Credit Card Account Purchase Agreement"), hereby assigns effective as of the File Creation Date of January 11, 2011 all rights, title and interest of Seller in and to those certain receivables, judgments or evidences of debt described in **Exhibit 1** attached hereto and made part hereof for all purposes.

Number of Accounts
Total Unpaid Balances
Premium
Due Seller



Amounts due to Seller by Purchaser in hereunder shall be paid U.S. Dollars by a wire transfer to be received by Seller no later than January 18, 2011 (the "Closing Date") by 2:00 p.m. Seller's time, as follows:



This Bill of Sale is executed without recourse except as stated in the Credit Card Account Purchase Agreement to which this is an Exhibit. No other representation of or warranty of title or enforceability is expressed or implied.

| Chase Bank USA, N.A. | Sherman Originator III, LLC |
|---|---|
| By: _____ | By: _____ |
| Date: January 12, 2011 | Date: 1/12/2011 |
| Title: Team Leader | Title: DIRECTOR |

# EXHIBIT 2

**Chase Card Services**

| | Equifax | TransUnion | Experian |
|---|---|---|---|
| Account Type: | **Revolving** | **Revolving** | **Revolving** |
| Account Number: | 42463151XXXX | 42463151XXXX | 42463151XXXX |
| Payment Responsibility: | Individual | Individual | Individual |
| Date Opened: | 06/2006 | 06/2006 | 06/2006 |
| Balance Date: | 01/2011 | 01/2011 | 01/2011 |
| Balance Amount: | $0 | $0 | |
| Monthly Payment: | | | |
| High/Limit: | $28,414 | $28,729 | $28,729 |
| Account Status: | Collection | Collection | Late Over 120 Days |
| Past Due Amount: | $0 | $0 | $28,414 |
| Comments: | LAST REPORTED DELINQUENCIES: 11/2010=R5,10/2010=R5,09 /2010=R5 CHARGED OFF ACCOUNT ACCOUNT TRANSFERRED OR SOLD | PURCHASED BY ANOTHER LENDER | ACCOUNT DELINQUENT 180 DAYS PAST DUE DATE CLOSED PURCHASED BY ANOTHER LENDER LAST REPORTED DELINQUENCIES: 12/2010=R ,11/2010=R LAST PAID: 08/2009 |

**Chase Card Services**
P.O.Box 15298
Wilmington, DE-19850
(800) 955-9900

**24-Month Payment History**

| Equifax | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| * | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 90 | 60 | 30 | * | * | * | * | * | * | * | * | * | * |
| Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
| 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 |

| TransUnion |
|---|
| **No 24-Month Payment Data available for display.** |

| Experian | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NR | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 90 | 60 | 30 | * | * | * | * | * | * | * | * | * |
| Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb |
| 11 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 |

**Seven-Year Payment History**

| | Equifax | TransUnion | Experian |
|---|---|---|---|
| 30 Days Past Due: | 0 | 0 | 1 |
| 60 Days Past Due: | 0 | 0 | 1 |
| 90 Days Past Due: | 0 | 0 | 13 |

**Chase Card Services**

| | Equifax | TransUnion | Experian |
|---|---|---|---|
| Account Type: | **Revolving** | **Revolving** | **Revolving** |
| Account Number: | 42463113XXXX | 42463113XXXX | 42463113XXXX |
| Payment Responsibility: | Individual | Individual | Individual |
| Date Opened: | 09/2004 | 09/2004 | 09/2004 |
| Balance Date: | 01/2011 | 01/2011 | 01/2011 |

**Chase Card Services**

| | | | |
|---|---|---|---|
| Balance Amount: | $0 | $0 | |
| Monthly Payment: | | | |
| High/Limit: | $29,687 | $29,687 | $29,687 |
| Account Status: | Collection | Collection | Late Over 120 Days |
| Past Due Amount: | $0 | $0 | $29,687 |
| Comments: | LAST REPORTED DELINQUENCIES: 11/2010=R5,10/2010=R5,09/2010=R5 CONSUMER DISPUTES THIS ACCOUNT INFORMATION ACCOUNT TRANSFERRED OR SOLD | ACCT INFO DISPUTED MEETS FCRA | ACCOUNT DELINQUENT 180 DAYS PAST DUE DATE CLOSED LAST REPORTED DELINQUENCIES: 12/2010=R ,11/2010=R ACCOUNT INFORMATION DISPUTED BY CONSUMER LAST PAID: 06/2009 |

**Chase Card Services**

P.O.Box 15298
Wilmington, DE-19850
(800) 955-9900

**24-Month Payment History**

| | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | **Equifax** | | | | | | | | | | | | | | |
| * | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 90 | 60 | 30 | * | * | * | * | * | * | * | * | |
| Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
| 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 |

| |
|---|
| **TransUnion** |
| No 24-Month Payment Data available for display. |

| | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | **Experian** | | | | | | | | | | | | | | |
| NR | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 90 | 60 | 30 | * | * | * | * | * | * | * | * |
| Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb |
| 11 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 | 09 |

**Seven-Year Payment History**

| | Equifax | TransUnion | Experian |
|---|---|---|---|
| 30 Days Past Due: | 0 | 0 | 1 |
| 60 Days Past Due: | 0 | 0 | 1 |
| 90 Days Past Due: | 0 | 0 | 15 |

**Chase Card Services**

| | Equifax | TransUnion | Experian |
|---|---|---|---|
| Account Type: | Revolving | Revolving | Revolving |
| Account Number: | 46401820XXXX | 46401820XXXX | 46401820XXXX |
| Payment Responsibility: | Individual | Individual | Individual |
| Date Opened: | 03/2007 | 03/2007 | 03/2007 |
| Balance Date: | 01/2010 | 01/2010 | 01/2010 |
| Balance Amount: | $0 | $0 | |
| Monthly Payment: | | | |
| High/Limit: | $7,500 | $7,500 | $7,500 |
| Account Status: | As Agreed | As Agreed | As Agreed |
| Past Due Amount: | $0 | $0 | $0 |

**Chase Card Services**

| Comments: | LAST REPORTED DELINQUENCIES: 06/2007=R2 ACCOUNT PAID ACCOUNT CLOSED BY CREDIT GRANTOR | CANCELLED BY CREDIT GRANTOR LAST REPORTED DELINQUENCIES: 06/2007=R2 | CURRENT ACCOUNT/WAS 30 DAYS PAST DUE DATE PAID LAST REPORTED DELINQUENCIES: 06/2007=R1 ACCOUNT CLOSED BY CREDIT GRANTOR LAST PAID: 06/2007 |
|---|---|---|---|

**Chase Card Services**

P.O.Box 15298
Wilmington, DE-19850
(800) 955-9900

**24-Month Payment History**

| Equifax |
|---|
| No 24-Month Payment Data available for display. |

| TransUnion | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * |
| Dec 09 | Nov 09 | Oct 09 | Sep 09 | Aug 09 | Jul 09 | Jun 09 | May 09 | Apr 09 | Mar 09 | Feb 09 | Jan 09 | Dec 08 | Nov 08 | Oct 08 | Sep 08 | Aug 08 | Jul 08 | Jun 08 | May 08 | Apr 08 | Mar 08 | Feb 08 | Jan 08 |

| Experian | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NR | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * |
| Jan 10 | Dec 09 | Nov 09 | Oct 09 | Sep 09 | Aug 09 | Jul 09 | Jun 09 | May 09 | Apr 09 | Mar 09 | Feb 09 | Jan 09 | Dec 08 | Nov 08 | Oct 08 | Sep 08 | Aug 08 | Jul 08 | Jun 08 | May 08 | Apr 08 | Mar 08 | Feb 08 |

**Seven-Year Payment History**

| | Equifax | TransUnion | Experian |
|---|---|---|---|
| 30 Days Past Due: | 1 | 1 | 1 |
| 60 Days Past Due: | 0 | 0 | 0 |
| 90 Days Past Due: | 0 | 0 | 0 |

**Chase Card Services**

| | Equifax | TransUnion | Experian |
|---|---|---|---|
| Account Type: | Revolving | Revolving | Revolving |
| Account Number: | 51206403XXXX | 51206403XXXX | 51206403XXXX |
| Payment Responsibility: | Individual | Individual | Individual |
| Date Opened: | 04/2002 | 04/2002 | 04/2002 |
| Balance Date: | 08/2009 | 08/2009 | 08/2009 |
| Balance Amount: | $0 | $0 | |
| Monthly Payment: | | | |
| High/Limit: | $14,000 | $14,000 | $14,000 |
| Account Status: | As Agreed | As Agreed | As Agreed |
| Past Due Amount: | $0 | $0 | $0 |
| Comments: | CREDIT CARD ACCOUNT PAID | CLOSED | PAID CURRENT ACCOUNT LAST PAID: 11/2006 |

**Chase Card Services**

P.O.Box 15298
Wilmington, DE-19850

## **VERIFICATION**

I, Namon Kent, am the Complainant in the above entitled action. I have read the

foregoing Complaint. The facts stated therein are within my knowledge and are true

and correct, except those matters stated on information and belief, and, as to those, I

believe them to be true and correct. I declare under penalty of perjury under the laws

of the State of Illinois that the foregoing is true and correct.

Date: February 28, 2012

Namon Kent, In Pro Se

## DEMAND FOR JURY TRIAL

Plaintiff moves this court pursuant to Fed.R.Civ.P. Rule 38 "Jury Trial of Right" and thereby demand a Jury Trial. The undersigned certifies that a copy hereof has been furnished to the parties listed in the Certificate of Service.

Date: February 28, 2012

Namon Kent, In Pro Se