**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NAMON KENT,

                *Plaintiff*,

*vs.*

CHASE BANK USA, N.A., a Corporation;
and DOES 1 THROUGH 100, INCLUSIVE,

                *Defendants*.

No. 12-cv-1411

Hon. Ronald A. Guzman

**DEFENDANT CHASE BANK USA, N.A.'S MEMORANDUM IN SUPPORT OF
MOTION TO ENFORCE SETTLEMENT AGREEMENT OR IN THE ALTERNATIVE
TO DISMISS SECOND AMENDED COMPLAINT**

Chase Bank USA, N.A. ("Chase"), by and through its undersigned attorneys, states as

follows in support of its Motion to Enforce Settlement Agreement or in the Alternative to

Dismiss Second Amended Complaint ("SAC"):

**INTRODUCTION**

This action has exploded from a single-count complaint into fifteen separate claims for

relief arising out of Kent's alleged credit card accounts with Chase. Kent has no cause of action;

but even so, as Kent concedes in his Complaint, the parties settled any and all disputes in

February 2012 in a written settlement agreement. The parties do not dispute the material terms

of the agreement, and Kent attaches the settlement agreement—which Chase's counsel

forwarded to his counsel at the time and which he admits he accepted—as Exhibit 19 to the SAC.

As the parties have already resolved the dispute that forms the basis of all the claims in the SAC,

the settlement agreement should be enforced and all claims dismissed.

In the alternative, the SAC again fails to state a claim upon which relief can be granted. The Court previously admonished Kent that "this will be the final amendment the Court allows." (Doc. 42, at 1.)  Accordingly, the SAC should be dismissed with prejudice.

## STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 n.4 (7th Cir. 2012).  For a claim to be cognizable, "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)) (omission in original).  The allegations of the complaint must also "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'"  *Id.*  If the complaint fails to meet these two hurdles, "the plaintiff pleads itself out of court."  *Id.*

## ARGUMENT

**I.      The Court should enforce the parties' settlement agreement and dismiss the SAC.**

Kent correctly alleges that the parties entered into the settlement agreement attached as Exhibit 19 to the SAC (the "Settlement Agreement").  Kent admits that "[o]n or about February 10, 2012 a written contractual agreement was submitted by the Defendant that was accepted by the Plaintiff's counsel."  SAC ¶ 141.  Kent further admits that the terms of the agreement are reflected in the Settlement Agreement attached as Exhibit 19 to the SAC.  *Id.*  Accordingly, the parties agree that the Settlement Agreement attached to the SAC controls.[1]  As a result, all of the

---

[1] Chase remains able and willing to perform its obligations under the Settlement Agreement once Kent has honored and performed his obligations under the agreement, including but not limited

claims asserted in the SAC are barred by the release in paragraph 2(A) of that agreement. For these reasons, Chase prays that the Court enter an order enforcing the Settlement Agreement attached as Exhibit 19 to the Second Amended Complaint, and dismissing all claims in the SAC with prejudice.

## II.      Chase renews its motion to dismiss Counts I–III (Doc. 36).

Assuming, *arguendo*, that the parties did not enter into a settlement agreement, Kent has not pled any additional facts to cure the defects identified in Parts I and III of Chase's Memorandum in Support of Motion to Dismiss First Amended Complaint. (Doc. 36.) In fact, these claims are essentially the same as the claims this Court previously dismissed.

Kent may not state any claims under the Fair Credit Reporting Act ("FCRA") because Kent cannot allege that Chase learned of his dispute from a Consumer Reporting Agency ("CRA"), which is a prerequisite to liability under the FCRA. Chase is not a CRA. *See* Doc. 36, at 4–5 (collecting cases). This is the third time Kent has attempted to plead this claim. Kent also cannot state a claim for breach of contract because he has not substantially performed, he has not complied with all conditions precedent, and he has not alleged that Chase is in breach of the Settlement Agreement. *See id.* Part III.A. Finally, Kent cannot state a claim for promissory fraud because the singular act of forwarding a proposed settlement agreement to Kent's attorney is not promissory fraud under Illinois law. *See id.* Part III.B. Accordingly, for the reasons set out in Parts I and III of Chase's Memorandum in Support of Motion to Dismiss First Amended Complaint, Counts I–III of the SAC should be dismissed with prejudice.

---

to signing the agreement, providing any notices that Kent believes are appropriate, and dismissing all claims in the SAC as required by the release in the agreement.

III.    **Kent's TILA claims (Counts IV–IX) fail to state a claim upon which relief can be granted.**

Kent, now for the first time, next recharacterizes the alleged August 7, 2009 dispute letter that forms the basis of his FCRA claims as a billing-dispute letter governed by Regulation Z, 12 C.F.R. § 226.1 *et seq.* (hereinafter "TILA"), to allege six separate TILA violations. First, some of the claims are barred by the one-year statute of limitations under TILA. Second, the "billing errors" that Kent alleges Chase committed are not billing errors within the scope of TILA. Finally, while Kent does not attach his alleged billing-dispute letter, Kent does not allege sufficient facts to establish that the alleged letter triggered any of Chase's duties under TILA. For any or all of these reasons, Counts IV–IX should be dismissed with prejudice.

A.      *Counts IV and V are time-barred.*

Counts IV and V are barred by the one-year statute of limitations applicable to TILA claims. Section 130, 15 U.S.C. § 1640, governs civil liability for TILA violations. *See* 15 U.S.C. § 1640(a). The section limits the time to bring a claim for failing to correct alleged billing errors to "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also Basham v. Fin. Am. Corp.*, 583 F.2d 918, 927 (7th Cir. 1978) ("Failure to bring an action for damages within the one-year limitation period bars the action."); *Asher v. Bank One*, 538 F. Supp. 2d 1037, 1039 (N.D. Ill. 2008) (same).

Based on Kent's allegations, Chase's duties under TILA were triggered on August 7, 2009, when he allegedly sent the dispute letter. 2d Am. Compl. ¶ 51. Kent alleges that Chase is liable for failing to send Kent an acknowledgement of this letter by September 6, 2009 (Count IV) or to send Kent a letter resolving the dispute by November 5, 2009 (Count V). Therefore, the applicable limitations period for Counts IV and V expired in 2010. *Basham*, 583 F.2d at 927; *Asher*, 538 F. Supp. 2d at 1039. As Kent did not file suit until February 28, 2012 or allege any

TILA claims until his SAC filed on March 13, 2013, Counts IV and V are barred by the statute of limitations and should be dismissed with prejudice.

>    **B.**    *Counts IV–IX fail to allege that Chase committed a billing error, as required to assert a claim under TILA.*

Kent's allegations are also defective because an allegedly erroneous entry on a *consumer report* does not fit the definition of a billing error on a *periodic statement* under TILA.  To trigger Chase's obligations with regard to alleged billing errors, the letter must "indicate[] the obligor's belief that *the statement* contains a billing error and the amount of such billing error." 15 U.S.C. § 1666(a)(2) (emphasis added).  Further, to be a "billing error," the error must be reflected on a billing statement sent by the creditor.  *See* 15 U.S.C. § 1666(b); 12 C.F.R. § 226.13(a)(1) ("[T]he term billing error means [a] reflection *on or with a periodic statement* of an extension of credit that is not made to the consumer or to a person who has actual, implied, or apparent authority to use the consumer's credit card or open-end credit plan." (emphasis added)).  As a matter of law, the reporting of negative information about an account to a third party does not constitute a "billing error" under the Act.  *See, e.g., Owusu*, 655 F. Supp. 2d at 328 & n.23 (holding that reporting the closure of an account to a third party is not a billing error because it is not "reflect[ed] on a statement" as required to meet the definition of billing error under 15 U.S.C. § 1666(b)).

Here, the alleged "billing error" was Chase's alleged placement of "inaccurate information *on the Plaintiff's credit file* reported to the Credit Reporting Agencies."  SAC ¶ 52 (emphasis added).  None of the claims is based on any allegation that the content or substance of any periodic billing statement was inaccurate or erroneous.  *See generally* SAC.  As his allegations make clear, Kent's dispute is with the content of his consumer report, and not with the content of any periodic statement.  Therefore, Kent has failed to allege that Chase committed

any "billing error" that could form the basis of liability under 15 U.S.C. § 1666 or 12 C.F.R.

§ 226.13. Accordingly, Kent has failed to state a claim for TILA violations and Counts IV–IX

should be dismissed with prejudice.

C.      *The August 7, 2009 letter was not a billing-dispute letter, as set forth in TILA.*

Kent has also failed to state a claim upon which relief can be granted because Kent fails

to allege that he sent a billing-dispute letter to Chase, as set forth in TILA. The requirements for

a billing-dispute letter are set out in 15 U.S.C. § 1666(a) and 12 C.F.R. § 226.13(b). The billing-

dispute letter must be sent to the address designated by Chase as "[t]he address to be used by the

creditor for the purpose of receiving billing inquiries from the obligor" within 60 days of the date

the alleged error first appeared on a periodic statement. 15 U.S.C. § 1666(a) & 15 U.S.C.

§ 1637(b)(10); *see also* 12 C.F.R. §§ 226.7(b)(9) & 226.13(b)(1). The notice must also "be in

writing and include the consumer's name and account number, his belief that *the statement*

contains a billing error, the reasons for his belief, and the amount of the error." *Jeffries v. Dutton*

*& Dutton, PC*, No. 05-cv-4249, 2006 WL 1343629, at *6 (N.D. Ill. May 11, 2006) (emphasis

added); *see also* 12 C.F.R. § 226.13(b)(3) (requiring a billing-dispute letter to contain sufficient

detail for the creditor to identify "the reasons for the belief that a billing error exists, and the

type, date, and amount of the error.").

Kent does not allege that he sent the letter to Chase's designated address for billing

disputes, that the letter was timely, or that the letter contained any information that would enable

Chase to identify and resolve a billing error. Accordingly, Kent has failed to state a claim under

TILA and Counts IV–IX should be dismissed with prejudice.

**IV.     The Illinois Collection Agency Act does not apply to Chase (Counts X–XIII).**

      *A.     The Illinois Collection Agency Act does not apply to Chase.*

Based on Kent's own allegations, the Illinois Collection Agency Act ("ICAA") "specifically does not include . . . Banks." SAC ¶ 171. The ICAA "specifically does not include the following: *Banks*, including trust departments, affiliates, and subsidiaries thereof, fiduciaries, and financing and lending institutions (except those who own or operate collection agencies)." 225 ILCS 425/2.03(1) (emphasis added). Chase is a bank and therefore not subject to the ICAA. 225 ILCS 425/2.03(1); *see also RBS Citizens, N.A. v. Compuray Staffing, Inc.*, No. 11-cv-2586, 2012 WL 502653, at *3 (N.D. Ill. Feb. 15, 2012) (holding that the ICAA does not apply to Charter One bank because "Charter One is a bank, not a collection agency" (citing 225 ILCS 425/2.03)); *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 965 (N.D. Ill. 2005). As such, Chase is expressly excluded from the regulations contained in the ICAA.

The ICAA also does not apply to "persons whose collection activities are confined to and are directly related to the operation of a business other than that of a collection agency." 225 ILCS 425/2.03. Chase cannot be held liable under the ICAA for collecting debts ancillary to its business of originating and servicing credit-card accounts. The ICAA deems a business to be a "collection agency" only if that business buys debts *of other creditors* for purposes of collection. 225 ILCS 425/3. Here, the SAC is replete with allegations that Chase acted at all relevant times to collect its own debt founded upon a credit-card account opened with Chase. *See generally* SAC ¶¶ 51–99 (alleging that Chase originated the credit-card accounts); *see also id.* ¶ 192 (alleging that "in fact CHASE always owned the account"). Further, no part of the ICAA deems an account originator to be a collection agency merely by selling its own accounts to others for collection. Accordingly, Counts X–XIII fail to state a claim upon which relief can be granted.

      B.     *Kent fails to allege the requisite actual damages to state a claim for violation of the ICAA (Counts X–XI & XIII).*

Assuming Kent can allege a cause of action against Chase under the ICAA, Kent may not maintain a private right of action because he does not allege that he has suffered any damages. "[T]he ICAA requires a showing of actual damages" as a precondition to stating a private cause of action. *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870, 881 (N.D. Ill. 2009). Counts X, XI, and XIII fail to allege that Kent has suffered any actual damages, and therefore each count should be dismissed. In Count X, Kent alleges that Chase is liable to him because "Defendants are currently under investigation by the Federal Trade Commission for Federal Fair Debt and Collection Act [*sic*] violations." SAC ¶ 174. Assuming for purposes of this Motion that this allegation is true, any such investigation does not cause Kent any individual, particularized harm. Likewise in Count XI Kent fails to allege that he suffered any actual damages as a result of Chase's alleged disclosure of information adversely affecting Kent's reputation for creditworthiness.[2] *Id.* ¶ 177. Finally in Count XIII, Kent alleges that Chase violated the ICAA by charging off his account. *Id.* ¶ 183. Again assuming the truth of this allegation, Kent has not alleged he was damaged because Chase charged-off his account. As Plaintiff cannot allege that he suffered actual damages, Counts X, XI, and XIII should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**V.    Kent fails to state any cognizable claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (Count XIV).**

As an initial matter, Count XIV fails to meet the pleading requirements of Fed. R. Civ. P. 9(b). "Complaints alleging deceptive practices in violation of the [Consumer Fraud Act] must be pled with sufficient particularity under Fed. R. Civ. P. 9(b)." *Armbrister v. Pushpin Holdings,*

---

[2] To the extent Kent argues that the allegedly false disclosures were made on a consumer credit report, Count XI is also preempted by the FCRA. *See* Part VI, *infra*.

*LLC*, ___ F. Supp. 2d ___, 2012 WL 4097219, at *6 (N.D. Ill. 2012). "By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, [Rule 9(b)] requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is reasonable and supported, rather than defamatory and extortionate." *Ackerman v. N'west Mut. Life Ins. Co.*, 172 F.3d 467, 469–70 (7th Cir. 1999).

Here, the SAC contains the barebones allegation that "CHASE demanded payment from KENT for an alleged debt that was never owed." SAC ¶ 187. This sole allegation is insufficient under Rule 9(b). The SAC is devoid of any facts supporting any allegation that the alleged debt was not his. The SAC does not even contain any allegations of the account to which the claim refers, the dates and amounts of the transactions for which Kent is not liable, or the reasons why Kent is not liable for the debt. Without these necessary allegations, Kent cannot plead a proper cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA").[3]

Kent's claims also fail under the CFA because Kent cannot allege that he relied on any alleged misrepresentations, or that he suffered damages as a result of such non-existent reliance. "A Consumer Fraud Act claim requires (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *De Bouse v. Bayer*, 235 Ill. 2d 544, 550 (Ill. 2009). "That the plaintiff must prove that actual damages were suffered 'as a result' of the deceptive act imposes an

---

[3] Kent also alleges that NCO Group, Inc. ("NCO"), a debt collection agency, worked with Chase to attempt to collect the alleged "debt" from him. SAC ¶ 88. However, as Kent alleges himself, Chase sold one of the alleged subject credit card accounts to LVNV Funding LLC and another credit card account to Central Portfolio Control, Inc., not NCO. SAC ¶¶ 67, 69. Therefore, none of the allegations relating to NCO support a cause of action under the CFA or any other of Kent's claims.

obligation on the plaintiff to prove the deceptive act proximately caused any damages." *Id.* Therefore, "[t]he basic principle . . . is that to maintain an action under the [CFA], the plaintiff must actually be deceived by a statement or omission that is made by the defendant." *Id.* at 554.

Here, Kent cannot plead that he performed any act in reliance on the truth of Chase's alleged deceptive practices. Kent alleges that Chase violated the CFA by "demand[ing] payment from KENT for an alleged debt that was never owed." SAC ¶ 187. However, Kent does not allege that Chase's alleged payment demands proximately caused him to enter into any transaction in reliance on a misrepresentation, *i.e.*, payment of the alleged debt. Therefore, Count XIV fails to state a claim upon which relief can be granted. *Cf. De Bouse*, 235 Ill. 2d at 555 ("A consumer cannot maintain an action under the [CFA] when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant.").

Finally, Kent may not bootstrap a CFA claim by alleging that he suffered unrelated damages after Chase allegedly demanded payment for a nonexistent debt. Kent alleges that he was damaged when "CHASE['s] debt collector LVNV misrepresented to the State Court that LVNV owned the alleged credit card account . . . ." SAC ¶ 192. Whatever damage Kent may argue he suffered in that lawsuit is not damage proximately caused by Kent's reliance on the payment demand. *See De Bouse*, 235 Ill. 2d at 550 (stating that reliance on a deceptive practice must proximately cause a plaintiff's injury); *see also id.* at 554 (holding that a plaintiff cannot meet the proximate-cause standard by alleging an injury from deceptive advertising where she was unaware of the advertising prior to purchasing a product). Kent does not allege that he took any action upon the belief that Chase was demanding payment of a just and proper debt, let alone that Kent suffered any actual damages in reliance on the belief that the debt was just and proper, and therefore Kent has failed to state a claim for relief under the CFA.

**VI.     Kent's libel claim (Count XV) is preempted by the FCRA.**

The FCRA preempts Kent's libel claim.  The FCRA provides that "[N]o consumer may

bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence

with respect to the reporting of information against any consumer reporting agency, any user of

information, or any person who furnishes information to a consumer reporting agency . . . ,

except as to false information furnished with malice or willful intent to injure such consumer."

15 U.S.C. § 1681h(e).  The FCRA also provides that "[n]o requirement or prohibition may be

imposed under the laws of any State with respect to any subject matter regulated under . . .

section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to

consumer reporting agencies . . . ."  15 U.S.C. § 1681t(b)(1)(F).  Read together, sections

1681h(e) and 1681t(b) bar all state-law defamation claims relating to furnishing credit

information to a CRA.  *Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011) ("Section

1681h(e) preempts some state claims that could arise out of reports to credit agencies;

§ 1681t(b)(1)(F) preempts more of those claims."); *see also Todd v. Chase Bank USA, N.A.*, No.

11-cv-6258, 2012 WL 470099, at *2 (N.D. Ill. Feb. 13, 2012) (noting that the District Court is

bound by *Purcell*'s holding that "*all* state law claims within the scope of section 1681s–2 are

preempted" (emphasis added)).  Here, both sections bar Kent's libel claim.

Kent's citation to California Civil Code § 1785.25(a) does not apply here.  Section

1785.25(a) is exempted from the preemption contained in section 1681t(b)(1)(F), but the section

applies only to residents of California listing a California mailing address.  *See* CAL. CIV. CODE

§ 1785.1(e) (stating that the legislative purpose of the act containing § 1785.25(a) is to "best

protect the interests *of the people of the State of California*." (emphasis added)); *cf.* CAL. CIV.

CODE § 1785.6 ("The notices and disclosures to consumers provided for in this title shall be

required to be made only to those consumers who have a mailing address in California.").  Here,

Kent admits that at all relevant times he was a resident of Cook County, Illinois. SAC ¶ 5. Accordingly, section 1785.25(a) of the California Civil Code is of no consequence in this case.

## VII. The SAC should not be entitled to the deference afforded *pro se* parties because it appears to have been ghost-written by an attorney.

Finally, upon information and belief, the SAC and other pleadings were not written by Kent and, therefore, should not be entitled to the deference awarded to pleadings truly drafted by *pro se* plaintiffs. In this Court, "[t]he ghost-writing of a complaint on behalf of a *pro se* plaintiff raises a 'serious matter of unprofessional conduct.'" *Thigpen v. Banas*, No. 08-cv-4820, 2010 WL 520189, at *1 (N.D. Ill. Feb. 11, 2010) (quoting *Johnson v. City of Joliet*, No. 04-cv-6426, 2007 WL 495258, at *2 (N.D. Ill. Feb 13, 2007)); *see also Chriswell v. Big Score Enter., LLC*, No. 11-cv-861, 2013 WL 315743, at * 5 (N.D. Ill. Jan. 28, 2013) ("This Court agrees with its sister courts that the practice of 'ghost-writing' briefs for *pro se* litigants is unethical and will not be permitted."). It is fundamentally unfair to afford Kent the leniency given to *pro se* parties if his pleadings are indeed drafted by an attorney. *See Thigpen*, 2010 WL 520189, at *1; *see also* Order entered December 21, 2012 (Doc. 42, at 1) ("Kent is bound by Federal Rule of Civil Procedure ('Rule') 11, just as any lawyer is, and will be held to its provisions." (citation omitted)); *Dohm v. Gilday*, No. 02-cv-9056, 2004 WL 1474581, at *2 (N.D. Ill. June 29, 2004) (Guzman, J.) ("An empty head but a pure heart is no defense. [Rule 11] requires counsel to read and consider before litigating." (quotation omitted)).

Kent's submissions in this case strongly suggest that he is filing pleadings that have been ghostwritten by an attorney. For instance, Kent responded to Chase's first motion to dismiss with a well-articulated brief, containing citations to authority largely conforming to the Bluebook, that lays out Kent's arguments in the manner that would be expected by an attorney. (*See* Doc. 20); *Chriswell*, 2013 WL 315743, at *4 (noting that the pro-se plaintiff's response

contained "robust legal analysis and argument that is indicative of a licensed attorney's work").

By contrast, Kent's response to Chase's second motion to dismiss is devoid of any legal style,

contains incomplete sentences that trail off in ellipses, and, with the exception of the

conclusion—which is largely copied and pasted from page 7 of the original response—does not

contain a single case citation in support of Kent's arguments.  *See* Doc. 39; *see also id.* at 2

("The case was not judicated [*sic*].").  In stark contrast to Kent's response to Chase's second

motion to dismiss, the SAC returns to an attorney's pleading style, with full sentences, detailed

(albeit legally insufficient) allegations, and analysis of complex regulatory schemes such as the

FCRA and TILA.  (*See* Doc. 55); *Thigpen*, 2010 WL 520189, at *1 (questioning whether the pro-

se plaintiff had written the proposed second amended complaint because "the language used and

writing style of the second amended complaint appeared to be those of an attorney").  These

pleadings show that Kent should not be afforded the same deference that a *pro-se* plaintiff

typically would receive.

## CONCLUSION

For the foregoing reasons, the Parties' settlement agreement should be enforced or, in the

alternative, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

By:    /s/ Gregory Scott Gistenson
Alison C. Conlon
Gregory S. Gistenson
BARNES & THORNBURG LLP
One N. Wacker Dr., Suite 4400
Chicago, Illinois 60606
Telephone:  (312) 357-1313
Facsimile:  (312) 759-5646
Email:      aconlon@btlaw.com;
            gregory.gistenson@btlaw.com

*Attorneys for Defendant Chase Bank USA, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2013, a copy of the foregoing **Defendant Chase Bank USA, N.A.'s Memorandum in Support of Motion to Enforce Settlement Agreement or in the Alternative to Dismiss Second Amended Complaint** was filed electronically. Notice of this filing will be sent to the following individuals by operation of the Court's electronic filing system, and, to those parties not receiving such notice, by U.S. Mail, first-class postage prepaid, from One Wacker Drive, Chicago, Illinois on April 5, 2013. Parties may access this filing through the Court's system.

Namon Kent, Pro Se
Your Community Law Office & Legal Clinic
8043 South Paulina Street
Chicago, Illinois 60620-4531

 /s/ Gregory Scott Gistenson
Gregory S. Gistenson